678 So.2d 574 (1996)
Ahren J. KNOWER, Jr.
v.
Deborah PERANIO, et al.
No. 96-CA-105.
Court of Appeal of Louisiana, Fifth Circuit.
July 1, 1996.
*575 Darleen M. Jacobs, New Orleans, and James L. Yates, New Orleans, for plaintiff-appellee.
William L. Brockman, Bernard, Cassisa and Elliott, Metairie, for defendants-appellants.
Before GAUDIN, WICKER JJ., and PATRICK J. McCABE, J. Pro Tem.
GAUDIN, Judge.
Ahren J. Knower, Jr. slipped and fell in a Shell Oil Company service station on April 5, 1993 at approximately 1:15 a.m. He fell because the station's maintenance man had used a slippery solution containing Tide laundry detergent and Clorox bleach to clean the station's concrete surface. The area where the solution was being used and where Knower fell was not blocked off with warning devices.
The trial court found Shell and its station manager, Deborah Peranio, liable and awarded Knower $125,000.00 plus interest and costs. Ochsner/Sister of Charity Health Plan, Inc. intervened and was awarded $7,946.31 against defendants in intervention, Knower, Shell and the station manager in solido plus interest and costs. We affirm.
On appeal, Shell and its manager assign as errors:
(1) the trial judge's finding that the soap and water presented an unreasonable risk of harm and that Shell failed to exercise reasonable care,
(2) the trial judge's holding Shell and Peranio liable under LSA-R.S. 9:2800.6,
(3) the finding that Peranio was negligent,
(4) the finding that Knower was not contributory negligent because the slippery condition of the concrete surface was obvious, and
(5) the award of excessive damages.
Clearly Shell was negligent. The slippery solution looked like ordinary water, nothing unusual in a gasoline service station, and presented an unreasonable risk of harm. Peranio testified that she had instructed the maintenance man to block off the dangerously slick area with cones until the solution was washed off. This was not done.
Knower slipped and fell after exiting his automobile and walking toward the station's convenience store. He saw that the concrete was wet but mere water would have presented no problem. He had no way of knowing that the water contained detergent and bleach, which Peranio admitted made the concrete unusually slick.
R.S. 9:2800.6 deals with the burden of proof required in claims against merchants such as a Shell service station. The statute states, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonable safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
We cannot say the trial judge erred in deciding that Knower met this statutory burden. Because the slippery condition of the concrete was not obvious, Knower was not contributorily negligent.
Mr. Knower was 52 years of age at the time of his injury and weighed 285 pounds. When he slipped, he fell hard on his right shoulder and felt pain immediately. The same day, he went to the Ochsner emergency *576 room where X-rays were taken. He was given pain medication and muscle relaxants.
Dr. Michael Wilson, an orthopedic surgeon, saw Knower on April 29, 1993. Examination revealed a torn rotator cuff. An arthrogram performed on May 6th confirmed the tear. Dr. Wilson performed surgery on May 11. The surgery lasted 2½ to 3 hours under general anesthesia and consisted of acromionplasty, or removal of a bone spur, and suturing of the torn rotator cuff muscle. As of Knower's last visit to a doctor on August 31, 1993, he had not recovered his full range of motion and remained in need of further treatment. His medical bills at Ochsner amounted to $7,983.
Prior to surgery, Knower was in pain and could not use his right arm. He needed assistance to dress himself. After the surgery, he continued to experience pain. He testified that as of the time of trial, he still had to sleep on his back in order to avoid putting pressure on his shoulder.
The use of Knower's right arm is still impaired. He performs exercises daily, he said, to loosen his arm.
While likely in the high range, it appears that this award was within the trial judge's discretion.
Shell is to bear costs of this appeal.
AFFIRMED.